**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM MAYO, | ) | |
| | ) | Civil Action No. 17 – 1490 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ROBERT NEWMAN, JOSHUA | ) | ECF No. 21 |
| POSKA, MICHAEL HAINES, | ) | |
| AARON EICHER, MICHAEL | ) | |
| MICHALSKY, C/O MCKELVEY, | ) | |
| SERGEANT FRIEND, JAY LANE | ) | |
| and MARK CAPOZZA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff, William Mayo, an inmate of the Pennsylvania Department of Corrections

("DOC") initiated the above-captioned prisoner civil rights action on November 16, 2017, and

his Complaint was docketed on December 6, 2017. (ECF Nos. 1, 3.)  Thereafter, he filed an

Amended Complaint on March 20, 2018. (ECF No. 13.)  In his Amended Complaint, Plaintiff

asserts claims of retaliation, excessive use of force, denial of medical care, denial of due process,

and cruel and unusual conditions of confinement in violation of the First, Eighth, and Fourteenth

Amendments to the United States Constitution.  He further alleges Pennsylvania state law claims

of assault and battery and negligence.  Defendants, three correctional officers (Eicher,

Michalsky, McKelvey), three correctional sergeants (Poska, Haines, and Friend), one

correctional lieutenant (Newman), and the current and former superintendents of SCI-Fayette

(Capozza and Lane), have filed a Motion to Dismiss Plaintiff's Amended Complaint for Failure

to State a Claim and Brief in Support thereof.[1]  (ECF Nos. 21, 22.)  Plaintiff filed a Response

and Brief in Opposition to the Motion (ECF Nos. 26, 27), as well as a Declaration and a

Statement of Disputed Facts (ECF Nos. 28, 29).  The Motion is now ripe for review.

## A.  Allegations

Plaintiff was transferred from SCI-Greene to SCI-Fayette on November 20, 2015, due to

what he claims were ongoing issues with a particular correctional officer whom, unbeknownst to

him, used to work at SCI-Fayette under Defendant Newman.  (ECF No. 13, ¶¶ 14-15.)  He states

that this "immediately triggered retaliatory misconduct" upon his arrival but that he did not start

to document it until it became a pattern.  Id., ¶ 15.  On March 17, 2016, at approximately 8:15

pm, Defendant Newman toured the unit and threated "to have something in store" for Plaintiff,

which prompted Plaintiff to file a grievance (#618202) five days later reporting that he was in

fear for his safety.  Id., ¶¶ 16-17.  A review of this grievance, which is attached to Plaintiff's

original Complaint as Exhibit B, shows that Plaintiff did not complain that Defendant Newman

threatened "to have something in store" for him but instead complained that he threatened to

have Plaintiff extracted from his cell after the two engaged in an argument about what Plaintiff

deemed were "blatant forms of retaliation" since his transfer.  (ECF No. 3-2, p. 2.)  The

grievance was denied as frivolous and without merit, and this finding was upheld on appeal by

the Superintendent.  Id., pp. 5-8.  His appeal to final review was deemed untimely.  Id., pp. 9-11.

However, Plaintiff did state in this appeal that Defendant Newman actually did extract him from

---

[1] Defendants have not labeled their motion as a Partial Motion to Dismiss, but it will be
construed as such given that they do not move to dismiss Plaintiff's two excessive force claims.
*See* ECF No. 22, p. 2, n.1.

his cell on April 9, 2016, but he did not say in his grievance appeal why the extraction occurred. Id., p. 10.

Plaintiff claims that on April 8, 2016, Defendant Newman "lived out his threat" by spraying several cans of OC in Plaintiff's face apparently because of Plaintiff's failure to fully comply with the strip out process during a cell search at which Defendants Haines, Eicher and Michalsky were all present. (ECF No. 13, ¶ 18.) Plaintiff claims that his failure to comply with the strip order was due to his inability to stand on his left foot because of an ankle injury of which he states Defendant Newman was well aware. Id. The spray left Plaintiff "barely conscious" so he was dragged out of his cell and down the steps by Defendants Haines, Eicher and Michalsky, reinjuring his ankle as a result. Id., ¶ 19. Plaintiff was given what he calls a retaliatory fabricated misconduct (#B613479) as a result of the incident, which is attached to his Complaint as Exhibit C. (ECF No. 3-3, p. 8.) Plaintiff was charged with refusing to obey an order, possession of contraband and possession of items not authorized for retention. Id. The report states that Plaintiff "refused to properly conduct a strip search and refused orders to give contraband up" and that the officer observed Plaintiff with "a bag of tobacco" that he "dumped into his toilet" and also observed contraband in Plaintiff's cavity. Id. Plaintiff pled no contest and the misconduct was dismissed without prejudice due to a procedural error, although he claims in his Amended Complaint that he was exonerated by the Hearing Examiner. Id., p. 9; (ECF No. 13, ¶ 20.)

As a result of this incident, Plaintiff filed a grievance (#623138) on April 25, 2016, which is attached to his Complaint as Exhibit C. (ECF No. 3-3, pp. 2-4.) Plaintiff claimed that when Defendant Newman came to conduct the cell search that he was sprayed as a result of not complying with "the wicket procedure." He also claimed that he was dragged down the steps

and confined in a dry cell in the medical department but not given the opportunity to shower until April 21, 2016. Id. Because Plaintiff's grievance contained allegations of abuse against staff, it was investigated by the SCI-Fayette Security Office who found no substantial evidence to support Plaintiff's allegations. The grievance was denied based on the fact that the investigation was reviewed by the Office of Special Investigations and Intelligence and determined to be satisfactory. Id., pp. 10-12. The denial was upheld on initial appeal, and Plaintiff's appeal to final review was deemed untimely. Id., pp. 13-18.

According to Plaintiff, the misconduct report was "erroneously rewritten" on May 26, 2016. (ECF No. 13, ¶ 21.) The rewritten misconduct (#B547902) is attached to his Complaint as Exhibit D. (ECF No. 3-4, pp. 2-3.) It is virtually identical to the original misconduct but indicates that Plaintiff was only charged with refusing to obey an order and possession of contraband, and he was given thirty days in disciplinary housing after pleading no contest. Id. Plaintiff appealed the misconduct on the basis that the procedures employed were contrary to law, Department directives or regulations, claiming that the misconduct was rewritten by the reporting officer in an untimely manner, without any justification and for no other reason but the fact that he was coerced by his superior officers as a result of the grievances Plaintiff had filed about them over this incident. Id., p. 4. His misconduct appeal was denied, partly due to the fact that Plaintiff pled no contest, but as a result of his subsequent appeal Superintendent Jay Lane modified his punishment to fifteen days disciplinary conduct time. Id., pp. 5-8. However, the misconduct was vacated and dismissed with prejudice on final appeal. Id., pp.9-11.

Following the incident on April 8, 2016, Plaintiff was placed in a dry cell for possession of contraband. (ECF No. 13, ¶ 22.) He was subsequently transported back to his unit upon his release but placed on property restriction for eleven days, unable to possess whites, thermals,

sheets, a washcloth, soap, toothpaste, toothbrush and writing utensils.  Id.  He was given his

property back on April 19, 2016, but states that a lot was missing, including all of his records

documenting the different forms of retaliation he had endured by Defendants Newman and

Poska.  Id., ¶ 23.

Plaintiff filed a grievance (#622838) about the conditions of his confinement when he

was placed on property restriction, claiming that it was not warranted as a result of his

misconduct.  This grievance is attached to Plaintiff's Complaint as Exhibit E.  (ECF No. 3-5, pp.

2-3.)  Notably, Plaintiff stated in his grievance that he was placed on property restriction for

seven days, but he states that it was for eleven days in his Amended Complaint.  He also stated in

his grievance that he was given a jumpsuit, mattress, blanket and toilet paper, and he mentioned

that the reason he could not shower from April 7, 2016 until April 21, 2016 was because he was

placed on movement restriction and the shower in his cell did not work.  Id.  In response to his

grievance, it was noted that Plaintiff was placed on property restriction for only seven days, from

April 12, 2016 to April 19, 2016, and that he did not have to be found guilty of a misconduct to

be placed on restrictions.  Id., p. 5.  His appeal was denied for the same reasons and it was noted

that if Plaintiff's claims of a broken shower were true then staff would have moved him to

another cell or given him the opportunity to take a shower.  Id., pp. 6-8.  His appeal to final

review was deemed untimely.  Id., pp. 9-11.

Plaintiff also filed a grievance (#625061) in reference to his missing property, which is

attached to his Complaint as Exhibit F.  (ECF No. 3-6, pp. 2-3.)  He claimed that the missing

property included a civil complaint, a copy of his DC153M, a copy of the RHU Handbook,

grievances #618081 and #618202, a copy of a grievance he filed at SCI-Greene in reference to

his ankle being fractured in an excessive force incident, and the confiscation of two pairs of

boxers, a t-shirt, and a copy of his legal exemption approval form.  Id.  In response, it was noted that some of Plaintiff's property was confiscated due to being contaminated with OC spray and institutional policy does not permit contaminated items to be returned.  Id., p. 6.  His initial appeal was denied and his appeal to final review was deemed untimely.  Id., pp. 7-13.

Plaintiff claims that he lost a lot of vision as a result of being sprayed in the face with numerous cans of OC spray, and, on April 27, 2016, he filed a grievance complaining that he was being denied an eye examination.  (ECF No. 13, ¶ 24.)  This grievance (#623614) is attached to Plaintiff's Complaint as Exhibit G.  (ECF No. 3-7, pp. 2-3.)  Plaintiff claimed that he was being denied an eye examination as a result of the medical department's effort to cover up Defendant Newman's retaliatory actions.  Id.  The document attached to the grievance indicates that Plaintiff sent two sick call requests in the two weeks before filing his grievance.  Id., p. 4.  The grievance and its subsequent appeals were dismissed for procedural errors.  Id., pp. 5-10.

Plaintiff filed another grievance on May 18, 2016, complaining that he was not allowed to bring his property with him when he was moved to a different cell and claiming that it was a ploy by Defendants Newman and Poska "to unlawfully confiscate the remainder of the retaliatory records that Plaintiff ha[d] compiled (regarding them) to interfere with Plaintiff being able to adequately exhaust his administrative remedies."  (ECF No. 13, ¶ 25.)

Plaintiff filed a criminal complaint with the Fayette County District Attorney on June 13, 2016, claiming that he had been assaulted by Defendant Newman on April 8, 2016.  Id., ¶ 26.  See also (Ex. I to Plaintiff's Complaint, ECF No. 3-8).

Plaintiff next alleges that when he returned from the law library on December 17, 2016, he noticed that all three of his legal document boxes under his bed were wet and that his cell appeared to have been searched outside of his presence.  (ECF No. 13, ¶¶ 27-28.)  When he

6

inquired about the search, he was told by the escorting officers that a prisoner on the top tier was responsible for flooding Plaintiff's cell with water.  Id., ¶ 29.  Plaintiff also noticed that several documents were missing, which he states were "retaliatory administrative reports" that were unlawfully taken to interfere with his ability to adequately litigate the instant case.  Id., ¶ 30.

On January 20, 2017, Plaintiff was escorted to what he thought was going to be the property storage room for a legal material exchange so that he could place certain documents (exhibits, affidavits and administrative documents) in his footlocker since he believed that staff had been unlawfully confiscating his documents.  Id., ¶ 31.  However, Plaintiff was instead taken to a hallway and directed to give his documents to Defendant Haines.  Id., ¶ 32.  Plaintiff filed a grievance (#661657) about this incident, which is attached to his Complaint as Exhibit K, and in it he claimed that Defendant Haines staged the incident in order to read his legal material.  (ECF No. 3-9, pp. 2-4.)  In denying the grievance, it was noted that Plaintiff wanted personal property out of his footlocker and when Defendant Haines told him that he was not permitted a personal property exchange, only a legal material exchange, Plaintiff became argumentative with the staff and was subsequently escorted back to his cell.  Id., p. 5.  It was also noted that prior to any property or legal material exchange, the materials are searched before and after they are placed or removed from the property.  Id  Plaintiff's initial and final appeals were both denied.  Id., pp. 6-12.

Plaintiff next claims that on February 23, 2017, which was approximately seven days before he was scheduled to have his custody level changed, he was issued a retaliatory misconduct (#C043493) by Defendant Haines for threatening staff, using abusive language and refusing to obey an order.  (ECF No. 13, ¶ 33.)  The misconduct report, attached to Plaintiff's Complaint as Exhibit L, indicates that Plaintiff yelled abusive and threatening language at staff

and refused orders to stop when they were on his pod attempting to speak to another inmate. (ECF No. 3-10, p. 3.) Plaintiff was sanctioned to sixty days disciplinary custody and his appeals were denied based on his refusal to attend the misconduct hearing. Id., pp. 4-9.

Plaintiff claims that Defendant Haines staged another incident in retaliation for the filing of grievances against him when, on April 12, 2017, while escorting Plaintiff back from the shower, he placed handcuffs on Plaintiff's wrists so tight that it stopped his circulation and turned his left wrist blue. (ECF No. 13, ¶ 34.) Plaintiff filed a grievance about the incident (#673130), attached to his Complaint as Exhibit M, stating that he immediately showed his pod officer the lacerations on his right wrist and requested that he notify medical. (ECF No. 3-11, pp. 2-4.) His grievance was denied after an investigation conducted by SCI-Fayette Security Office did not find any substantial evidence to support his allegations of abuse against Defendant Haines. Id., p. 5. Plaintiff's initial and final appeals were both denied. Id., pp. 6-10.

Plaintiff next claims that he was denied the opportunity to clean his cell by Defendants McKelvey and Friend after his cell took in water due to another inmate overflowing a toilet on June 3, 2017. (ECF No. 13, ¶ 35.) He also claims that he was denied the opportunity to clean it the following day after he signed up for cell cleaning. Id., ¶ 36. He filed a grievance (#680903) in response to the incident, which is attached to his Complaint as Exhibit N, and stated that he was told by Defendant McKelvey that he was being denied the opportunity to clean his cell because the flood was "a form of rebellion" and the result of a conspiracy by all the prisoners on the unit. (ECF No. 3-12, pp. 2-4.) The grievance was denied based on the fact that Plaintiff had not made the sergeant on duty on June 3, 2017 aware that his cell had water in it from the flooding and he did not sign up for cell cleaning on the morning of June 4, 2017. Id., pp. 5-6. Plaintiff's initial and final appeals were denied, but it was noted that Plaintiff had requested a

new jumpsuit after the flooding occurred because he took his off and used it as a damn. Id., pp. 7-12. Plaintiff claims that he was admitted to a Psychiatric Observation Cell ("POC") on June 15, 2017, after he had a nervous break down from having to "live with the smell of urine and excrement" in his cell for twelve days. (ECF No. 13, ¶ 37.)

Plaintiff next claims that Defendant Poska entered his cell during a search by the C.E.R.T. team on July 26, 2017, and took copies of administrative reports that had his name on them from Plaintiff's box of legal documents. Id., ¶ 38. Plaintiff filed a grievance (#690414), which is attached to his Complaint as Exhibit O, reporting that Defendant Poska had confiscated documents in an attempt to interfere with his right to access the court and in retaliation for pending litigation against him. (ECF No. 3-13, pp. 2-3.) His grievance was denied based on lack of evidence, and his initial and final appeals were also denied. Id., pp. 5-11.

Finally, Plaintiff claims that on September 26, 2018, Defendant Poska told him "don't think that it's over," which caused him to file a grievance the following day to report that he was in imminent fear of retaliation. (ECF No. 13, ¶¶ 39-40.)

## B. **Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations

9

> that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. Apr. 3, 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

**C. Discussion**

**1. Excessive Force and Assault and Battery**

Plaintiff claims that on April 8, 2016, Defendant Newman and "his subordinates," Defendants Haines, Eicher and Michalsky, used excessive force against him in violation of the Eighth Amendment and also claims that their actions amounted to assault and battery under Pennsylvania law. (ECF No. 13, ¶¶ 47, 48.) Although not clearly specified in his Amended

Complaint, Plaintiff also appears to assert another claim for excessive force in connection with Defendant Haines' use of handcuffs on April 12, 2017.  *See* ECF No. 13, ¶ 34.  Defendants do not move for summary judgment on Plaintiff's two claims of excessive force, stating that they are more appropriately discussed on summary judgment, but they do move to dismiss Plaintiff's assault and battery claim as being barred by sovereign immunity.  (ECF No. 22, pp. 2, 4-5.)

The doctrine of sovereign immunity bars suits against states by its own citizens, as well as citizens from other states, unless the state has waived immunity.  Employees of the Commonwealth of Pennsylvania are entitled to sovereign immunity to the extent they are acting within the scope of their office or employment.  *See* PA. Const. Art. 1, § 11; 1 Pa. C.S.A. § 2310. There are nine specifically delineated exceptions to sovereign immunity, 42 Pa. C.S.A. § 8522, but none of these apply to this case.  However, the Court will not decide at this stage of the proceedings whether Defendants are immune from Plaintiff's assault and battery claim because it observes that the Commonwealth's sovereign immunity statute protects Commonwealth employees only to the extent that they are "acting within the scope of their duties."   1 Pa. C.S.A. § 2310.

"Under Pennsylvania law, an action falls within this the scope of employment if it:  (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpected by the employer."  Wesley v. Hollis, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007) (citing Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (noting that the Pennsylvania Supreme Court has adopted the Restatement (Second) of Agency's definition of conduct "within the scope of employment").  Despite Plaintiff's argument to the contrary, his

own allegations indicate that Defendants were acting within the scope of their employment when they used the OC spray on him because he admittedly would (or could) not comply with the strip search orders. Nevertheless, the Court will resolve this issue on summary judgment once the record has been more fully developed. Therefore, Defendants' Motion to Dismiss Plaintiff's assault and battery claim will be denied without prejudice.

### 2. <u>Denial of Due Process</u>

Plaintiff alleges that he was denied his right to due process when Defendant Lane rewrote the misconduct that Plaintiff received as a result of the April 8, 2016 incident. He also claims that he was denied due process when he was issued what he claims was a false misconduct for what occurred on February 23, 2017 and because he was not afforded a hearing on it.

To assert a right to procedural due process, a plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000). "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." <u>Dunbar v. Barone</u>, 487 F. App'x 721, 724 (3d Cir. 2012) (addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 566-67 (1974)). "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" <u>Dunbar</u>, 487 F. App'x at 724-25 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty

interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (quoting Sandin). To determine if a plaintiff's placement was atypical, the court considers: "1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." Shoats, 213 F.3d at 144.

### a. Misconduct #B547902

While Plaintiff claims that Defendant Lane violated his due process rights when he reissued the misconduct thirty-seven days after the incident occurred, he does not specify how it violated his rights apart from it being a violation of institutional policy. Notwithstanding the fact that it was not a violation of DOC policy,[2] the misconduct was subsequently vacated and dismissed with prejudice on final review. *See* ECF No. 3-4, p. 11. Even though Plaintiff was initially sanctioned to thirty days of disciplinary conduct time, and may have served the full sanction before the misconduct was dismissed, he does not allege any facts showing that the length of his confinement, or the conditions of his confinement in the RHU, amounted to an "atypical and significant hardship" under Sandin so as to trigger due process protections.[3] *See*

---

[2] DOC policy DC-ADM 801 § 4(A)(6) permits the Hearing Examiner to dismiss any misconduct charge without prejudice to permit recharge without determination of guilt or innocence.

[3] The Court notes that Plaintiff does complain about the conditions of his confinement after he was issued the original misconduct for what occurred on April 8, 2016, specifically, property restriction for eleven days, but the conditions that he describes does not amount to an atypical, significant deprivation. In this regard, prison conditions may objectively violate the Eighth Amendment when inmates are deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). While not specifically alleged in his Amended Complaint, Plaintiff's claim that he was put on property restriction and had to go without whites, thermals, sheets, a washcloth, soap, toothpaste, toothbrush and writing utensils for eleven days does not rise to the level of an Eighth Amendment violation. *See* Matthews v. Murphy, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (no Eighth Amendment violation where inmate was deprived of a towel, toothbrush, toothpaste, and soap for thirty-four days); Harris v. Fleming,

Edmonds v. Sobina, 296 F. App'x 214 (3d Cir. 2008) (90 days in the RHU not an "atypical and significant hardship"); Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002) (because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that placement of a prisoner in administrative custody for fifteen months did not involve an atypical, significant deprivation). Since no liberty interest is at issue, this claim will be dismissed with prejudice.

**b. Misconduct #C043493**

Plaintiff next claims that he was denied due process because the misconduct he received on February 23, 2017 was "false" and he was not afforded the opportunity to appear before the Hearing Examiner. The filing of a false disciplinary charge, however, does not itself violate a prisoner's constitutional rights even if it may ultimately result in the deprivation of a protected liberty interest. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Therefore, the threshold question is whether the sanction imposed for the misconduct that Plaintiff received amounted to an "atypical and significant hardship" under Sandin so as to trigger due process protections.

---

839 F.2d 1232, 1235 (7th Cir. 1988) (no Eighth Amendment violation when prison officials housed inmate for twenty-eight days in roach-infested cell and denied him toilet paper for five days, and soap, a toothbrush and toothpaste for ten days); *see also* Readon v. Walker, 2012 WL 2162007, at *8 (M.D. Fl. June 13, 2012) (putting inmate on property restriction does not run afoul of the Eighth Amendment); Clark v. Presley, 2010 WL 2243427, at *2 (N.D. Miss. May 12, 2010) (thirty-day property restriction was permissible under the Eighth Amendment).

In this case, Plaintiff was sanctioned to sixty days of disciplinary confinement as a result of this misconduct. Like the sanction for his previous misconduct, this length of time that Plaintiff spent in the RHU, and the conditions associated with it, did not involve an atypical, significant deprivation, and therefore did not implicate a protected liberty interest that would trigger due process protections. As such, this claim will also be dismissed with prejudice.

### 3. <u>Access to the Courts</u>

Plaintiff appears to allege that he was denied his right to access the courts. To state a cognizable access to courts claim, a plaintiff must demonstrate that he has suffered an actual injury to his ability to present a claim. <u>Lewis v. Casey</u>, 518 U.S. 343, 352-54 (1996). The actual injury requirement is a constitutional prerequisite to suit. <u>Id</u>. at 351; <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002). An actual injury is shown only where a nonfrivolous, arguable claim is lost. <u>Christopher</u>, 536 U.S. at 415. Moreover, the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement. <u>Lewis</u>, 518 U.S. at 355. "Impairment of *any* other litigating capacity is simply one of the incidental . . . consequences of conviction and incarceration." <u>Id</u>.

Not only does Plaintiff fail to identify a "nonfrivolous" and "arguable" claim which was lost due to the actions of Defendants Newman, Poska and Haines, he also fails to specifically allege that he was actually denied his right to access the court. Instead, he simply states that these Defendants *attempted* to "hinder" and "interfere" with his right by confiscating unspecified legal documents and administrative reports. (ECF No. 13, ¶¶ 43, 51, 54.) However, the confiscation of legal materials, without suffering an actual injury, does not, in and of itself, state an access to courts claim. *See* <u>Monroe v. Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008) (allegations that defendants confiscated the plaintiffs' non-contraband legal materials without specifying

having suffered an actual injury were insufficient to state a claim). While Plaintiff addressed this claim in his response in opposition to Defendants' Motion to Dismiss, and cited to a list of incidents where the Defendants allegedly confiscated his property, he does not allege that he suffered any kind of injury as a result of their actions – apart from hindering his ability to exhaust his administrative remedies. (ECF No. 27, pp. 7-8.) Alleged interference with a prisoner's ability to exhaust his administrative remedies, however, does not qualify as an "actual injury" for purposes of an access to courts claim because prisoners are not constitutionally entitled to a grievance system and the state creation of such a procedure does not create any federal constitutional rights. *See* Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) ("I do not suggest that the [prison grievance] procedures are constitutionally mandated"); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). *See also* Woods v. First Correctional Medical, Inc., 446 F. App'x 400, 403 (3d Cir. 2011) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)); Winn v. Department of Corrections, 340 F. App'x 757, 759 (3d Cir. 2009) (citing Flick v. Alba, 932 F.2d at 729); McKeithan v. Beard, 322 F. App'x 194, 201 (3d Cir. 2009); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). If such an allegation is true, it would possibly allow a plaintiff to overcome an affirmative defense of exhaustion, but the Defendants in this case do not assert that defense in their Motion to Dismiss.[4] For these reasons, Defendants' Motion will be granted and Plaintiff's access to courts claim will be dismissed with prejudice.

---

[4] The Court notes, however, that Plaintiff attached to his Complaint numerous grievances that he filed to final review, and of those attached, most that he failed to exhaust occurred at the final stage of the process due to his failure to submit a timely appeal. It appears that this occurred multiple times for several reasons, but none of which he claimed was due to the interference of correctional staff. Nonetheless, Plaintiff's failure to exhaust his administrative remedies will not be addressed in this Opinion because it was not raised by the Defendants in their Motion.

## 4. **Retaliation**

Plaintiff claims that the actions taken by Defendants Newman, Haines, Eicher and Michalsky on April 8, 2016 (OC spray) and Defendant Haines on April 12, 2017 (tight handcuffs), as well as Defendant Haines' issuance of the misconduct on February 23, 2017, were done in retaliation.

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to state a retaliation claim, a plaintiff must sufficiently allege three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[5] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[6] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Defendants move to dismiss this claim based on the fact that Plaintiff failed to identify the conduct in which he engaged that caused the retaliation. In his response in opposition to their Motion, Plaintiff states that it was due to him filing grievances and lawsuits, conduct protected

---

[5] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[6] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

by the First Amendment. (ECF No. 27, pp. 6-7.) While not artfully pled in his Amended Complaint (ECF No. 13), Plaintiff appears to allege that the use of the OC spray on April 8, 2016 was in retaliation for him filing a grievance against Defendant Newman on March 22, 2016, id., ¶¶ 17-18; that his custody level was changed due to a false misconduct report issued by Defendant Haines on February 23, 2017 in retaliation for grievances he had filed against him and others,[7] id., ¶¶ 33, 55; and that Defendant Haines overly-tightened his handcuffs on April 12, 2017 in retaliation for filing grievances against him,[8] id., ¶34.

The filing of a prison grievance is an activity protected by the First Amendment. See Allah v. Al–Hafeez, 208 F.Supp.2d 520, 535 (E.D.Pa.2002) ("both filing a lawsuit and filing grievances are protected activities") (citing Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997), and Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000)). However, the mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Moreover, Plaintiff states that Defendant Newman's threat to have something "in store" for him was made on March 17, 2016, prior to Plaintiff filing the grievance against him, and this would likely demonstrate a lack of a causal link between the filing of the grievance and the use of OC spray. Nevertheless, Plaintiff's claims of retaliation are more appropriately dealt with on summary judgment once the record has been more fully

---

[7] The Court notes that Plaintiff did not allege in his Amended Complaint that the misconduct was issued in retaliation for his filing grievances against Defendant Haines, but he did state as much in the Inmate's Version of the Misconduct Report that is attached to his Complaint as Exhibit L. See ECF No. 3-10, p. 2.

[8] Again, Plaintiff does not specifically allege this in his Amended Complaint, but he does claim it in his grievance that he filed against Defendant Haines that is attached to his Complaint as Exhibit M. See ECF No. 3-11, p. 2.

developed.  Therefore, Defendants' Motion to Dismiss Plaintiff's retaliation claims will be denied without prejudice.

**5.  Failure to Discipline**

Plaintiff claims that Defendants Lane and Capozza are liable for their failure "to take disciplinary or other action to curb the known pattern of physical abuse of prisoners at SCI Fayette . . ." and that this "contributed to and proximately caused" the excessive use of force against him on April 8, 2016.  (ECF No. 13, ¶ 52.)

The Third Circuit has held that a claim for failure to discipline "can only form the basis for section 1983 <u>Monell</u>[9] liability if the plaintiff can show both the contemporaneous knowledge of the offending incident[,] or knowledge of a prior pattern of similar incidents[,] and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  <u>Baldani v. Township of Millburn</u>, 2008 WL 4512939, at *5 (D.N.J. Sept. 29, 2008) (quoting <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126-27 (3d Cir. 1998)); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 673 (3d Cir. 1988); *see also* <u>MS ex rel. Hall v. Susquehanna Township School Dist.</u>, 43 F.Supp.3d 412, 425 (3d Cir. 2014) (a claim of "negligent retention/failure to discipline" under <u>Monell</u> requires "indifference and knowledge by a policymaker").  Plaintiff's Amended Complaint alleges no such facts.

First, Plaintiff fails to identify any general DOC policy or custom of failing to discipline employees, and no examples are given.  Plaintiff also fails to allege that Defendants Lane and Capozza had knowledge of and communicated approval for the incidents alleged, or identify a

---

[9] <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978).

pattern of violations resulting from failure to discipline employees. Second, Plaintiff does not identify any prior incidents for which the non-supervisory Defendants were not disciplined – let alone a pattern of such incidents that were condoned by Defendants Lane and Capozza. These Defendants cannot be held liable simply because of their supervisory positions. *See* Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the A.G. ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them). For these reasons, the Motion to Dismiss will be granted and the failure to discipline claim against Defendants Lane and Capozza will be dismissed with prejudice.

### 6. Denial of Medical Care

Plaintiff next alleges that he was denied medical care in the form of an eye examination (ECF No. 13, ¶ 45) and that this claim is brought against Defendant Lane, who the Court notes is not a doctor (ECF No. 27, p. 10). The law with respect to prison administrators like Defendant Lane is that they cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prisoner official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (discussing Durmer, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. at 236.

Plaintiff does not state how Defendant Lane, or any other named Defendant for that matter, was deliberately indifferent to his medical needs. He has not sued anyone from the medical department nor identified Defendant Lane's alleged involvement in or knowledge of the need for an eye examination and its subsequent denial. Plaintiff does not even specify who denied his request for an eye examination. Once again, Defendant Lane cannot be held liable simply by virtue of his supervisory position. *See* E*vancho*, 423 F.3d at 354. Given the law with respect to non-medical prison administrators, the claim against Defendant Lane will be dismissed with prejudice.

### 7. <u>Negligence</u>

Finally, Plaintiff asserts a claim of negligence due to "the failure of the Medical Depart. to give the Optometrist a directive to provide Plaintiff with a[n] eye examination . . . ." (ECF No. 13, ¶ 53.) Plaintiff, however, has not sued any medical official in this lawsuit, but even if he had, the claim would likely be barred by sovereign immunity as it applies to both intentional and negligent torts. *See* <u>Dill v. Oslick</u>, 1999 WL 508675, at *4 (E.D. Pa. July 19, 1999) (citing cases). Furthermore, even if Plaintiff wanted to pursue a professional negligence claim against some unnamed medical defendant, Pennsylvania law requires that a Certificate of Merit ("COM") accompany such a claim and be filed within sixty days following any action where it is alleged that "a licensed professional deviated from the acceptable professional standard." Pa. R. Civ. P. 1042.3. It must contain a written statement from "an appropriate licensed processional" declaring whether the professional liability claim is brought directly (the defendant's conduct fell below the standard of care, bringing about the harm), indirectly (the conduct of persons under the direction of the defendant fell below the standard of care, bringing about the harm), or that no expert testimony will be necessary to prosecute the claim against that defendant. Pa. R. Civ. P.

1042.3(a)(1)-(3).  Even though there is nothing in his Amended Complaint which would support

a medical negligence cause of action, Plaintiff has not filed a COM.  Therefore, this claim will be

dismissed with prejudice.

A separate order will issue.

Dated:  March 15, 2019.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM MAYO,            )
                                  )     Civil Action No. 17 – 1490
             Plaintiff,     )
                                  )
             v.              )     Magistrate Judge Lisa Pupo Lenihan
                                  )
ROBERT NEWMAN, *et al.*,   )
                                  )
            Defendants.   )

## ORDER

**AND NOW**, this 15th day of March, 2019, pursuant to the Memorandum Opinion issued contemporaneously herewith,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is granted in part and denied in part.  It is granted with respect to Plaintiffs claims of due process, access to courts, failure to discipline, denial of medical care and negligence, and those claims are dismissed with prejudice as it is clear that allowing for amendment would be futile.  The Motion is denied without prejudice with respect to Plaintiff's claims of retaliation and assault and battery.  Those claims will remain for summary judgment, as well as Plaintiff's claims of excessive force.

**IT IS FURTHER ORDERED** that the Clerk terminate the following Defendants from the docket:  Lane, Capozza, Poska, McKelvey and Friend.[10]

Lisa Pupo Lenihan
United States Magistrate Judge

---

[10] While Defendants McKelvey and Friend are named in the caption and briefly mentioned in the body of Plaintiff's Amended Complaint, there are no actual claims asserted against these Defendants.

cc: William Mayo
FZ-2947
SCI Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA  16652

Counsel for Defendants
(*Via CM/ECF electronic mail*)